*filed in open Court 6/10/05 me*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 JUN 10  AM 10: 04

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **Criminal Action No. 05-01-KAJ** |
| | : | |
| DAIMYON GIBBS, | : | |
| | : | |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to discussions between the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and David L. Hall, Assistant United States Attorney, and James Brose, Esq., attorney for the defendant, Daimyon Gibbs, the following agreement is hereby entered into by the respective parties:

1.     The defendant agrees to plead guilty to Count I of a one count Information, waiving prosecution by indictment, charging him with knowingly possessing with the intent to distribute more than five grams of a mixture and substance containing a detectable amount of cocaine base ("crack"), a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

2.     The maximum penalty is life imprisonment (including a mandatory minimum of 10 years), lifetime supervised release (including a mandatory minimum of eight years), a $4,000,000 fine, and a $100 mandatory special assessment. Defendant acknowledges that the government has filed an Information Pursuant to 21 U.S.C. § 851, and that he is subject to the enhanced statutory penalties set forth in Title 21, United States Code, Section 841, by virtue of his prior conviction for a felony drug offense.

3.     The defendant understands that if he were to proceed to trial on Count I of the



Information, charging a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), the government would have to prove each of the following elements of the offense beyond a reasonable doubt: (1) the defendant knowingly possessed, (2) more than five grams, (3) of a substance containing a detectable amount of cocaine base ("crack"), (4) with the intent to distribute.

4.    The defendant knowingly, voluntarily, and intelligently admits that on December 22, 2004 2004, he knowingly possessed approximately 34 grams of cocaine base ("crack") with the intent to distribute.

5.    Based on the defendant's actions to date, the United States agrees that the Court should grant a three-level reduction in the base offense level for the defendant's affirmative acceptance of responsibility under Sentencing Guideline § 3E1.1. The United States so agrees because the defendant has timely notified the authorities of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Should the defendant perform any act inconsistent with affirmative acceptance of responsibility under Sentencing Guideline § 3E1.1 subsequent to the entry of the guilty plea, the government reserves the right to modify its position on this issue.

6.    The defendant agrees to pay a $100 special assessment at the time of sentencing.

7.    If the Court orders the payment of any special assessment or fine as part of the defendant's sentence, the defendant agrees to voluntarily enter the United States Bureau of Prisons administered program known as the Inmate Financial Responsibility Program through which the Bureau of Prisons will collect a portion of the defendant's prison salary and apply it on the defendant's behalf to the payment of the outstanding debt ordered.

8.    The parties reserve the right to defend the probation officer's findings at the

sentencing hearing and to defend the sentencing court's rulings at any subsequent proceedings, including any appeal. The parties realize that the Court is not bound by any stipulations reached by the parties. However, if the Court decides not to follow any stipulation or recommendation in this Memorandum of Plea Agreement, or if the defendant does not receive the benefits he expects from any such stipulation or recommendation, the defendant may not withdraw his guilty plea. The parties stipulate and agree that, pursuant to Sentencing Guidelines Section 2D1.1, the base offense level for Count I is 28.

9.    It is further agreed by the undersigned parties that this Memorandum supersedes all prior promises, representations, and statements of the undersigned parties; that this memorandum may be modified only in a written agreement executed by all the undersigned parties; and that any and all promises, representations, and statements made prior to or after this Memorandum are null and void and have no effect whatsoever.

10.    The defendant understands that at sentencing the District Court must consider the United States Sentencing Guidelines and take them into account in exercising its discretion to determine the appropriate sentence and must also consider the other factors bearing on an appropriate sentence pursuant to 18 U.S.C. §3553(a). The defendant further understands that the Government will likely

recommend that the Court impose a sentence consistent with the sentencing range set forth by the

sentencing guidelines.

COLM F. CONNOLLY
United States Attorney

BY:

James Brose, Esq.
Attorney for Defendant

David L. Hall
Assistant United States Attorney

Daimyon Gibbs
Defendant

Dated:   10 JUNE 2005

AND NOW this _____ day of _____, 2005, the foregoing

Memorandum of Plea Agreement is hereby (accepted) (rejected) by the Court.

Honorable Kent A. Jordan
United States District Court
District of Delaware

1

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                         - - -

4    UNITED STATES OF AMERICA,        :     CRIMINAL ACTION
                                      :
5              Plaintiff,             :
                                      :
6              v.                     :
                                      :
7    DAIMYON GIBBS,                   :
                                      :
8              Defendant.             :     NO. 05-1 (KAJ)

9                         - - -

10                  Wilmington, Delaware
                Friday, June 10, 2005 at 9:30 a.m.
11                  CHANGE OF PLEA HEARING

12                        - - -

13   BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.

14                        - - -

15

APPEARANCES:
16

17        DAVID L. HALL, ESQ.
          Assistant United States Attorney
18
          Counsel for Government
19

20        LAW OFFICES
          JAMES F. BROSE, ESQ.
21        (Media, Pennsylvania)

22        Counsel for Defendant

23

24

25                                    Brian P. Gaffigan
                                      Registered Merit Reporter



```
 1              MR. BROSE:  Your Honor, if I may.  I could use
 2    about five more minutes with the defendant, if that would be
 3    all right?
 4              THE COURT:  All right.  I'll go ahead and recess
 5    for five.
 6              MR. BROSE:  Thank you, Your Honor.
 7              (Brief recess taken.)
 8              THE COURT:  All right.  Please be seated.
 9              Mr. Brose, are you prepared to proceed?
10              MR. BROSE:  Yes, Your Honor.
11              THE COURT:  Is your client?
12              THE DEFENDANT:  Yes, Your Honor.
13              THE COURT:  All right.  Why don't I have you two
14    gentlemen come forward, if you would, please.
15              MR. BROSE:  Do you want these documents now,
16    Your Honor?
17              THE COURT:  Yes, please.  Go ahead and hand them
18    to the clerk.
19              (Documents passed forward.)
20              THE COURT:  Okay.  Mr. Gibbs, I'm sure you've
21    had a chance to talk about this with your attorney but what
22    I need to do is ask you a series of questions to make sure
23    that what you are going to be saying to me is known and
24    voluntary and truthful; all right?
25              THE DEFENDANT:  Yes, Your Honor.
```

1        THE COURT:  And to begin with, I'll need to have

2   you sworn to tell the truth.  I'll ask the courtroom deputy

3   to administer that.

4            (Defendant placed under oath at 4:45 a.m.)

5        THE COURT:  Thank you.  Now to start with, I'll

6   ask your lawyer a question.

7        Mr. Brose, I have this plea agreement now signed

8   version and is it true then that your client wishes to plead

9   guilty to a one-count Information charging him with

10  violation of 21 U.S.C. 841(a)(1) and (b)(1)(B)?

11       MR. BROSE:  Yes, Your Honor.

12       THE COURT:  All right.  Then, Mr. Gibbs, do you

13  understand you are now under oath and that any answer you

14  may give to me that is false could be used against you later

15  in another prosecution for making a false statement or for

16  perjury?

17       THE DEFENDANT:  Yes, Your Honor.

18       THE COURT:  Please tell me how old you are today

19  and tell me the date of your birth?

20       THE DEFENDANT:  I'm 29.  I was born in 1975.

21       THE COURT:  And what day in 1975?

22       THE DEFENDANT:  July 28th.

23       THE COURT:  How far did you go in school, sir?

24       THE DEFENDANT:  I went through the 12th grade.

25  Graduated.

1              THE COURT:  Are you currently or have you

2    recently been under the care of a physician, including a

3    psychiatrist or under the care of a psychologist?

4              THE DEFENDANT:  No, Your Honor.

5              THE COURT:  Have you ever been hospitalized or

6    treated for any kind of mental illness or addiction to drugs

7    of any kind?

8              THE DEFENDANT:  No, Your Honor.

9              THE COURT:  Are you presently under the

10   influence of any drug, medication or alcoholic beverage?

11             THE DEFENDANT:  No, Your Honor.

12             THE COURT:  Do you understand what is happening

13   here today?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Okay.  I need to ask you to explain

16   to me briefly in your own words what it is we're here to

17   accomplish today, what is the purpose of the hearing today,

18   just so that I know, I'm sure that you understand that you

19   understand why we're here?

20             THE DEFENDANT:  To plead guilty to the charges

21   in the Indictment.

22             THE COURT:  In the Information.  Okay.

23             Now, you've received a copy of this Information,

24   the one count Information that has the formal charge the

25   Government is bringing against you and that you've indicated

1     a willingness to plead guilty to?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  You had an opportunity to consult

4     with Mr. Brose and fully discuss this charge with him as

5     well as the case in general?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Are you satisfied with the

8     representation that Mr. Brose has given you and advice he

9     has given you regarding your case?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Is your willingness to plead guilty

12    here the result of discussions that he or that you have had

13    with an attorney for the Government that has resulted in

14    this Memorandum of Plea Agreement which I have?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  All right.  And if I look at the

17    back page, there is a signature line for Daimyon Gibbs and a

18    signature over it.  Is that your signature, sir?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Now I'm going to ask Mr. Hall if he

21    would summarize the salient terms of the plea agreement with

22    Mr. Gibbs.

23             MR. HALL:  Thank you, Your Honor.

24             Pursuant to the written plea agreement, the

25    defendant agrees to plead guilty to Count I of a one-count

1    Information charging the defendant with possession with

2    intent to distribute more than five grams of a mixture and

3    substance containing a detectable amount of cocaine base or

4    crack in violation of Title 21, U.S. Code, Sections

5    841(a)(1) and 841(b)(1)(B).

6              He acknowledges the maximum penalties relating

7    to that charge.  Would you like me to review those, Your

8    Honor?

9              THE COURT:  I will be asking you about that

10   later.

11             MR. HALL:  He also acknowledges that the

12   Government has filed an Information pursuant to Title 21,

13   U.S. Code, Section 851, noticing the defendant that he is

14   subject to enhanced penalties under Section 841 based on the

15   fact he has a prior conviction for a felony drug offense.

16             The defendant acknowledges the elements of the

17   offense, which I understand the Court will be reviewing?

18             THE COURT:  Yes.

19             MR. HALL:  The defendant also acknowledges and

20   admits on December 22nd, 2004, he knowingly possessed

21   approximately 34 grams of cocaine base or crack with the

22   intent to distribute it.

23             The defendant and the Government agree that as

24   of this date, a three-level reduction in the offense level

25   under the guidelines pursuant to Sentencing Guideline

1  Section 3E1.1 is applicable because the defendant has timely

2  notified the Government of his intention to plead guilty and

3  has accepted responsibility within the meaning of 3E1.1.

4         The defendant agrees to a $100 special

5  assessment to be paid at the team of sentencing and also

6  agrees that any fine or assessments can be paid through

7  the United States Bureau of Prisons Inmate Financial

8  Responsibility Program and agrees to join that program if

9  the Court imposes a sentence of incarceration.

10         The parties have agreed pursuant to the

11  sentencing guidelines that based on the amount in question,

12  which is 34 grams of cocaine base or crack, that pursuant to

13  sentencing guidelines 2D1.1, the base offense level for the

14  one count of the Information is 28.

15         The parties agree that the written agreement

16  supersedes any other agreements or understandings between

17  the parties.

18         And the defendant also acknowledges his

19  understanding that the District Court must consider the

20  United States sentencing guidelines take into account in

21  exercising its discretion as to an appropriate sentence and

22  must also take into account other factors pursuant to Title

23  18, United States Code, Section 3553(a).

24         The defendant also understands that the

25  Government is likely to recommend at sentencing that the

1    Court impose a sentence within the sentencing range set

2    forth in the sentencing guidelines.

3                    THE COURT:  All right.  Thank you, Mr. Hall.

4             Mr. Brose, do you have any disagreement with

5    Mr. Hall's rendition of what the plea agreement contains?

6                    MR. BROSE:  No, Your Honor.

7                    THE COURT:  Okay.  Now, Mr. Gibbs, obviously

8    it's the written document itself that you have had a chance

9    to review which governs your agreement with the Government

10   but I had Mr. Hall put this on the record for purposes of

11   the record and to emphasize the terms of the agreement.  Do

12   you understand the terms of the agreement?

13                   THE DEFENDANT:  Yes, Your Honor.

14                   THE COURT:  Okay.  Does the plea agreement

15   represent in its entirety any understanding you have with

16   the Government?

17                   THE DEFENDANT:  Yes, Your Honor.

18                   THE COURT:  Okay.  Has anyone made any other or

19   different promise or assurance of any kind to you in an

20   effort to induce you to plead guilty?

21                   THE DEFENDANT:  No, Your Honor.

22                   THE COURT:  Has anybody tried to force you in

23   any way to plead guilty?

24                   THE DEFENDANT:  No, Your Honor.

25                   THE COURT:  Do you understand that the terms of

1    the plea agreement are merely recommendations to the Court,

2    and that I could reject the recommendations without

3    permitting you to withdraw your plea of guilty, if it's

4    accepted, and that I may impose a sentence that is more

5    severe than you anticipate?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Are you plead guilty of your own

8    free will and choice because you are guilty?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Do you understand that the offense

11   to which you are pleading guilty is a felony offense; if

12   your plea is accepted, you will be adjudged guilty of that

13   offense and that that adjudication may deprive of you

14   valuable civil rights such as the right to vote, the right

15   to hold public office, the right to serve on a jury and the

16   right to possess any kind of firearm?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Now, the maximum penalties for the

19   offense to which you plead guilty are set forth in the

20   Memorandum of Plea Agreement.  I'll ask Mr. Hall to state

21   those for the record.

22             MR. HALL:  Thank you, Your Honor.  The maximum

23   penalty for the one count of conviction pursuant to this

24   plea agreement is a life imprisonment, including a mandatory

25   minimum sentence of 10 years, lifetime supervised release,

1    including a mandatory minimum of eight years, a $4 million

2    fine and a $100 mandatory special assessment.  And the

3    reason for the enhanced sentencing is the Section 851

4    enhancement that I noted earlier.

5                 THE COURT:  All right.  Mr. Gibbs, do you

6    understand that these are the penalties, the maximum

7    penalties to which you expose yourself by your decision to

8    plead guilty?

9                 THE DEFENDANT:  Yes, Your Honor.

10                THE COURT:  Do you understand any term of

11   supervised release is in addition to any term of

12   imprisonment that may be imposed by the Court?

13                THE DEFENDANT:  Yes, Your Honor.

14                THE COURT:  Do you understand that while serving

15   your term of supervised release, you may not commit another

16   federal, state or local crime, nor may you possess illegal

17   controlled substances of any kind?

18                THE DEFENDANT:  Yes, Your Honor.

19                THE COURT:  Do you understand that if you

20   violate these or other conditions of your supervised

21   release, the Court could revoke your term of supervised

22   release without credit for time previously served on

23   post-release supervision?

24                THE DEFENDANT:  Yes, Your Honor.

25                THE COURT:  Do you understand that all these

1  things are possible consequences of your decision to plead

2  guilty; right?

3         THE DEFENDANT:  Yes, Your Honor.

4         THE COURT:  Let's talk for a moment about the

5  sentencing guidelines.  Have you and your attorney talked

6  about how the United States Sentencing Guidelines might

7  apply to your case?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  Do you understand that I'll not be

10 able to determine how the guidelines might apply until after

11 a presentence report has been completed and you and the

12 Government have had an opportunity to challenge the reported

13 facts and conclusions that are reached by the probation

14 officer and that the sentence that is imposed might be

15 different from any estimate your attorneys has given you?

16        THE DEFENDANT:  Yes, Your Honor.

17        THE COURT:  Do you understand that if, after

18 it's been determined how the guidelines apply to your case,

19 I decide that a sentence ought to be imposed that is more

20 severe or less severe than that contained in the guidelines,

21 I have the discretion to do that?  Do you understand that?

22        THE DEFENDANT:  Yes, Your Honor.

23        THE COURT:  Now, I apologize for hitting this

24 three times but I want to make sure you understand.  As I

25 mentioned earlier, do you understand that I need not accept

1    any Government recommendation on sentencing or your own

2    lawyer's recommendation or even the probation office's

3    recommendation and yet you would still be bound by your plea

4    of guilty whether you were surprised or disappointed in what

5    my sentencing decision would be.  Do you understand that,

6    sir?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Okay.  Now, under some circumstance,

9    of course, you may have rights to appeal a sentence.  And

10   you understand that; right?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Do you understand that parole has

13   been abolished and you will not be released on parole from

14   any term of imprisonment that the Court imposes?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Let's talk for a minute about rights

17   that you waive by choosing to plead guilty.  Specifically,

18   rights associated with trial.

19             First, do you understand that you have the right

20   to persist in a plea of not guilty if you want to?  Do you

21   know that?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Do you understand that if you did

24   persist in your right to plead not guilty, then you'd have

25   the right to trial by jury, during which you would also have

1    the right to the assistance of counsel for your defense and

2    the right to see and hear all the witnesses and have them

3    cross-examined in your defense?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Do you understand that you would

6    have the right on your own part to decline to testify unless

7    you voluntarily elected to do so and if you decided not to

8    testify or put on any evidence, that couldn't be used

9    against you?  Do you understand that?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Do you understand that you would

12   also have the right to the issuance of subpoenas or

13   compulsory process to compel the attendance of witnesses to

14   testify in your defense?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Do you understand that if you went

17   to trial, you would not have to prove your innocence, the

18   burden would be upon the Government to prove your guilt

19   beyond a reasonable doubt?  Do you understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Do you understand that this standard

22   of proving guilt beyond a reasonable doubt is the highest

23   standard of proof in our justice system; that if the

24   Government failed to establish your guilt beyond a

25   reasonable doubt, you would be acquitted of the charge

1  against you?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Do you further understand by

4  entering a plea of guilty, if that is plea is accepted,

5  there will be no trial and you will have given up your right

6  to trial as well the other rights associated with trial that

7  I just described?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Now, if you were to proceed to

10  trial, the Government would have to prove beyond a

11  reasonable doubt the essential elements of the charge in the

12  Information, so I'll ask Mr. Hall if he would please state

13  what the essential elements of the offense are.

14           MR. HALL:  Yes, Your Honor.  The elements of the

15  offense are that under Section 841(a)(1) and 841(b)(1)(B),

16  Title 21, that the defendant knowingly possessed more than

17  five grams of a substance containing a detectable amount of

18  cocaine base or crack, and that he had the intent to

19  distribute.

20           THE COURT:  Okay.  Mr. Brose, do you have any

21  disagreement with the statement of the essential elements of

22  the offense charged?

23           MR. BROSE:  No, Your Honor.

24           THE COURT:  Okay.  Now, Mr. Gibbs, did you in

25  fact commit the offense with which you are charged?

1          On December 22nd, 2004, the date of the offense

2    to which Mr. Gibbs is pleading guilty, the defendant agreed

3    to deliver approximately two ounces of cocaine base to the

4    informant in the parking lot which was shared by Happy

5    Harry's and the Food Lion.  The defendant appeared at that

6    place at the time that was set for the delivery, walked into

7    the Food Lion and then back out, appeared to be looking for

8    someone.  As he reapproached his vehicle, he was arrested.

9    The search of the vehicle yielded approximately 34 grams of

10   cocaine base.

11          Mr. Gibbs gave a statement after he waived his

12   Miranda Rights and admitted that he was delivering that

13   amount to the confidential informant and made further

14   statements concerning the origins of the crack cocaine.

15          In sum, Your Honor, that is what the Government

16   would prove at trial to prove the allegations in Count I of

17   the Information.

18          THE COURT:  All right.  Mr. Brose, do you have

19   any disagreement of the Government statement of what it

20   would prove if it went to trial?

21          MR. BROSE:  No, Your Honor.

22          THE COURT:  Mr. Gibbs, is there anything you

23   wish to add or amend or challenge about what the Government

24   said it would prove if this matter went to trial?

25          THE DEFENDANT:  No, Your Honor.

1          THE COURT:  All right.  Now, at this point,

2    Mr. Gibbs, we could read the Information aloud to you but

3    you can waive the reading of the Information if you want to

4    waive it.

5          THE DEFENDANT:  I waive it.

6          THE COURT:  Okay.  Then, Mr. Gibbs, how do you

7    now plead to Count I of the Information which charges you

8    with knowingly possessing with intent to distribute more

9    than five grams of a mixture and substance containing a

10   detectable amount of cocaine base in violation of Title 21,

11   United States Code, Sections 841(a)(1) and (b)(1)(B)?

12         THE DEFENDANT:  Guilty.

13         THE COURT:  I find that the guilty plea is a

14   knowing, voluntary plea.  I accept it and find that the

15   defendant is fully competent and capable of entering an

16   informed plea, that the defendant is aware of the nature of

17   the charge and the consequence of the plea.  And, therefore,

18   that the plea of guilty is a knowing, voluntary plea

19   supported by an independent basis in fact containing each of

20   the essentially elements of the offense.  Therefore, I

21   accept the plea and the defendant is now adjudged guilty of

22   that offense.

23         I'm going to ask the courtroom deputy to have

24   you sign the reverse side of this Information, sir, and

25   memorialize the plea of guilty you have entered.

1          THE COURT:  All right.  That status will remain

2     in effect.

3          I'm going to sign the Motion and Order to

4     Dismiss the Indictment without prejudice at this time.  I'll

5     also hand that to the courtroom deputy to be made of record

6     in this case.

7          I'm going to set the sentencing in this matter

8     for Tuesday, September 13th, 2005, at 11:30 a.m.  That's

9     Tuesday the 13th of September at 11:30 a.m.

10          All right.  Mr. Hall, Mr. Brose, do either of

11     you have in anything you wish to add of record or anything

12     that has occurred up to this point, Mr. Hall?

13          MR. HALL:  No, Your Honor.

14          THE COURT:  Mr. Brose?

15          MR. BROSE:  No, Your Honor.

16          THE COURT:  Okay.  We stand in recess.

17          MR. BROSE:  Thank you, Your Honor.

18          MR. HALL:  Thank you, Your Honor.

19          (Change of plea hearing ends at 10:05 a.m.)

20

21

22

23

24

25

1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                         - - -

4    UNITED STATES OF AMERICA,        :      CRIMINAL ACTION
                                      :
5              Plaintiff,             :
                                      :
6         v.                          :
                                      :
7    DAIMYON GIBBS,                    :
                                      :
8              Defendant.             :      NO. 05-1 (KAJ)

9                         - - -

10                   Wilmington, Delaware
                Monday, October 11, 2005 at 9:00 a.m.
11                   SENTENCING HEARING

12                         - - -

13   BEFORE:       HONORABLE KENT A. JORDAN, U.S.D.C.J.

14                         - - -

15

     APPEARANCES:
16

17            DAVID L. HALL, ESQ.
              Assistant United States Attorney
18
                   Counsel for Government
19

20            LAW OFFICES
              JAMES F. BROSE, ESQ.
21            (Media, Pennsylvania)

22                 Counsel for Defendant

23

24

25                                      Brian P. Gaffigan
                                          Registered Merit Reporter

1                          - oOo -

2                   P R O C E E D I N G S

3              (REPORTER'S NOTE:  The following sentencing

4     hearing was held in open court, beginning at 9:00 a.m.)

5              THE COURT:  Please be seated.

6              MR. HALL:  Good morning, Your Honor.

7              THE COURT:  Good morning, Mr. Hall.

8              MR. HALL:  David Hall for the Government.  We're

9     here in the matter of United States vs. Daimyon Gibbs,

10    05-01, for sentencing.  The Government is ready to proceed.

11             THE COURT:  All right.  Why don't we begin with

12    whatever argument we have associated with the presentence

13    report.  Mr. Brose, I understand you have some objections to

14    the report.

15             MR. BROSE:  (Nodding yes.)

16             THE COURT:  Why don't I have you come forward

17    and we'll talk about those in the first instance.

18             MR. BROSE:  Very well, Your Honor.

19             Your Honor, the primary objection we have with

20    regard to the report relates to the Base Offense Level.

21    It's our position that the Government, and we entered into

22    a guilty plea agreement wherein we stipulated to a Base

23    Offense Level score of 28.  Mr. Gibbs only admitted to facts

24    relating to certain of the events in his Indictment and

25    those facts essentially added up to an Offense Level score,

1   Base Offense Level score of 28.  With the three-point

2   reduction for Mr. Gibbs' cooperation -- not cooperation but

3   acceptance of responsibility, we believe the Total Offense

4   Level should be 25 and that moves his standard range down

5   below his 10-year mandatory minimum.  We understand there

6   is a 10-year mandatory minimum applicable here but we

7   don't want to be in a position -- and we also understand

8   the guidelines are advisory but we'd just as soon avoid the

9   possibility that the Court would be using a guideline range

10  that, even though it was advisory, was higher than the

11  10-year mandatory minimum where we agree to something that

12  was below the 10-year mandatory minimum.

13          THE COURT:  All right.

14          MR. BROSE:  Do you want to address these

15  serially, Your Honor?  I mean that is the main issue we have

16  for the Court.  There are some others.

17          THE COURT:  Let's have them all.  I understand

18  there is a criminal history point issue as well.

19          MR. BROSE:  Yes, Your Honor.  There is a -- Ms.

20  Klingler was kind enough to send me a copy of the court

21  order which I wasn't able to track down in my file this

22  morning.  She just sent it over to me and I did look at it.

23  And it's with regard to Paragraph No. 46 wherein Mr. Gibbs

24  gets three points credit for Criminal History event, which

25  was Possession With Intent to Deliver Cocaine.  The order

1    itself I found fairly confusing, and perhaps Ms. Klingler

2    can provide it to the Court if the Court doesn't have it.

3            THE COURT:  Well, I have a quote from it and I'd

4    be happy to read to you what I do have because I'm not sure

5    why we're disputing this.

6            The quote I've got states that, "The defendant

7    was placed in the custody of the Department of Corrections

8    at level five for a period of three years, given credit

9    for time served on this charge," et cetera, et cetera.  It

10   sounds like a three-year charge to me.  So what is the issue

11   that you've got, other than he was fortunate enough not to

12   have served the whole thing?

13           MR. BROSE:  Your Honor, I've got the same quote,

14   too, but the actual order, if you don't mind me reading it

15   into the record.

16           THE COURT:  Not a bit.

17           MR. BROSE:  Effective May 20th -- this is

18   paragraph four of the order.  Dated May 20th, 1997.

19   "Effective May 20th, 1997, the defendant is placed in the

20   custody of the Department of Corrections supervision level

21   five for a period of three years, given credit for time

22   served on this charge.  After serving 18 months at level

23   five, the balance of the sentence is suspended for six

24   months at supervision level three, followed by 18 months at

25   supervision level two, followed by one year at supervision

1    level one, consecutive to any probation previously imposed.

2    Upon successful completion of the New Hope program, balance

3    of level five is immediately suspended.  If defendant does

4    not successfully complete the New Hope program, the entire

5    level five sentence shall be served."

6         To me, that's a little bit confusing in that

7    the last two sentences indicate that upon successful

8    completion of the New Hope program, balance of level five is

9    immediately suspended.  Mr. Gibbs did successfully complete

10   the New Hope program within one year and it's our position

11   that accordingly, his sentence, the rest of it was suspended

12   and therefore he served a period of less than one year.

13   And, therefore, the points should drop from three to two.

14        Ms. Klingler and I did have a phone conversation

15   on Friday afternoon where she indicated to me that it

16   appears that his time in on this did exceed one year and to

17   the extent that that is accurate, we have no dispute.  I'm

18   just going by what Mr. Gibbs and I have discussed and his

19   recollection of the events.

20        THE COURT:  All right.  Is there anything else

21   you want to say before I hear from the Government on these

22   issues?

23        MR. BROSE:  That's all, Your Honor.

24        THE COURT:  All right.  Thank you, Mr. Brose.

25        Mr. Hall.

1          MR. HALL:  Thank you, Your Honor.  As for the

2   Criminal History issue, the Government's position is that

3   the probation report is correct and the guideline, the

4   Criminal History calculation should be based on that.  In

5   other words, the government doesn't see any ambiguity.

6          As to the guidelines Base Offense Level

7   calculation, the presentence report utilizes a total amount

8   of crack cocaine of 98.9 grams in order to yield an offense

9   level of 32 from which three points are subtracted for

10  acceptance of responsibility for a net offense level of 29.

11         The presentence report utilized three sets of

12  seizures in order to come to that quantity.  The first set

13  was a series of informant purchases from Mr. Gibbs prior to

14  December 22nd arrest.  The second is a seizure from the car

15  in which Mr. Gibbs was riding at the time just before his

16  arrest, and that was 34 grams of crack.  And then the third

17  is a seizure from the residence of approximately 42 grams of

18  crack that also occurred on December 22nd.

19         My understanding as to the objection by the

20  defense is not that those facts in the presentence report

21  are incorrect, the objection is that the Government and the

22  defendant stipulated the offense level should be calculated

23  based on the seizure from the car, which is 34 grams of

24  crack cocaine, which corresponds to an offense level of only

25  28, from which three points are subtracted for acceptance of

1    responsibility, and that is true.  And that is the

2    Government's position that the Court should sentence on the

3    basis of that 34 grams of crack cocaine seized from the car.

4         The result of that would be sentencing the

5    defendant to the mandatory statutory minimum of 120 months

6    or 10 years.  That differs from the range offered in the

7    presentence report in that the presentence report range is

8    121-to-151 months of incarceration.  So the Government's

9    stipulation, the Government's recommendation as to

10   sentencing of 10 years is one month lower than the minimum

11   guidelines sentence under the presentence report.

12         THE COURT:  Well, this is an intriguing

13   position, not one I'm used to hearing from the Government,

14   frankly, Mr. Hall.

15         I hear you telling me that the defense doesn't

16   contest the accuracy of the cocaine amounts seized, and I

17   take it that the Government doesn't contest it either but

18   you are asking me to not look at what I think my experience

19   has been, not long maybe, three years, though it has

20   uniformly been during those three years that the Government

21   wants the Court looking at all relevant conduct.  Are you

22   telling me that the sales to the CI aren't relevant conduct

23   and that the amounts seized from the home aren't relevant

24   under the guideline definition?

25         MR. HALL:  No.  What the Government is saying,

1   that we have stipulated to 34 grams as part of the plea

2   agreement.  Now, I should point out that the plea agreement

3   itself is clear that that doesn't bind the Court.  This is

4   not a C plea but it does bind the Government and our

5   stipulation is that the level of 28 minus 3 should be used

6   and, therefore, our recommendation is a 120-month sentence.

7              THE COURT:  I just want to make sure I'm clear.

8   You're making this recommendation because you are bound by

9   the plea agreement, recognizing that I am not.

10             MR. HALL:  Yes, sir.

11             THE COURT:  And not because as a legal matter

12  this isn't relevant conduct.

13             MR. HALL:  That's correct.

14             THE COURT:  All right.

15             MR. HALL:  Thank you.

16             MR. BROSE:  Your Honor, if I could have an

17  opportunity to respond?

18             THE COURT:  You certainly may.

19             MR. BROSE:  Thank you, Your Honor.

20             I think one of the things that is important

21  to point out in this situation is that Mr. Gibbs and I

22  believe that we had a potential suppressible issue here,

23  particularly with regard to some of the drugs that were

24  found.  We have never admitted to the actual amounts beyond

25  that which is admitted to in the guilty plea, so to the

1    extent that we -- to the extent that the Court needs an

2    objection from us as to the accuracy of the remaining

3    amounts, then so be it.

4              THE COURT:  Consider it objected.

5              MR. BROSE:  Yes.

6              THE COURT:  I've got you.

7              MR. BROSE:  To me, that wasn't so much of an

8    issue as upholding the deal here.  And the deal I think went

9    forward at least in part because we forgave our opportunity

10   to suppress some of the evidence in this case.  And it may

11   well have been that Mr. Gibbs would not be on the hook for

12   some of these things that are now included as relevant

13   conduct but for the fact that we moved forward with the

14   plea with the understanding that that was the number.

15             THE COURT:  Or maybe it would be because you

16   guys would have gone to trial and he would have been found

17   guilty.

18             MR. BROSE:  We're dealing with counterfactuals

19   here when we start talking about what would have happened

20   and that's the challenge for the Court under these

21   circumstances.  But I certainly take your point, Mr. Brose,

22   which is you entered into an agreement with the Government

23   with something in mind, and I understand that.

24             MR. BROSE:  Thank you, Your Honor.

25             THE COURT:  All right.  Why don't I have you

1   come forward with your client at this time.

2               (Mr. Brose and the defendant approach the

3   lectern.)

4               THE COURT:  And, Mr. Gibbs, I'm sure you had a

5   chance to talk with Mr. Brose about this proceeding before

6   we got here.  Let me explain how things are going to move

7   forward at this time.  I'll give you and your lawyer a

8   chance to talk generally about the case, then I'll give

9   Mr. Hall a chance on behalf of the Government to speak.

10  Then I'm going to talk to you about the guidelines and about

11  the case in general and give a sentence that I intend to

12  impose.  I'll give your lawyer and Mr. Hall a chance to

13  tell me whether there is some legal reason why it shouldn't

14  imposed.  If there is, we'll talk about it further.  If not,

15  I'll order it imposed as stated.

16              Why don't we go ahead and, Mr. Brose, if there

17  is comments you'd like to make in general now, I'll hear

18  from you and then I'll hear from your client.

19              MR. BROSE:  Very well, Your Honor.

20              I've had an opportunity to deal with Mr. Gibbs

21  in this matter since my appointment in the case.  Mr. Gibbs

22  is an intelligent, I think forthcoming individual.  He is

23  somebody who obviously has been through an entire life of

24  crime.  His record, his Criminal History indicates that he

25  has been involved numerous, numerous times with the law.

1   I'm not sure what the cause of that, what the root cause of

2   that is.

3            I know that in this particular matter, Mr.

4   Gibbs had indicated to me that this was the only way that

5   he saw that he could make ends meet and it was a financial

6   motivation for him to be involved in this crime.  He is not

7   a violent person.  He is not somebody who, other than his

8   involvement in the trade, in the transacting of the drugs I

9   don't believe is a serious threat to the community.  I

10  think he has got a lot of potential.  As I said, he is an

11  intelligent person.  He has corresponded with me throughout

12  his case.  He has sent me some case law which has been on

13  point.  He has been nothing but respectful of me in our

14  communications with one another, despite frankly some rather

15  trying circumstances.

16           This last issue, Your Honor, put me in a very

17  difficult position as his attorney to come in there and say,

18  well, yeah, we did make this agreement and, yeah, that was

19  the deal but, you know what?  It turns out that the law is

20  that you actually don't necessarily get to get the benefit

21  of the agreement.  It may be that there may be something

22  outside the agreement that causes a problem here.  And

23  Mr. Gibbs handled that I thought extremely respectfully and

24  I appreciate that.  And I'm not sure I would have under

25  those circumstances, frankly.

1          I think that 10 years is a long, long time.

2     And I think that 10 years is more than adequate in this

3     situation.  His prior offense, which involved drugs, a drug

4     transaction, occurred eight years ago and, frankly, I think

5     that Mr. Gibbs may not have understood completely what he

6     was doing at the time he entered into that plea.  He has

7     asked me if there is any way to get out from underneath that

8     plea, and I told him in no uncertain terms that the time is

9     gone.  You are not going to be able to get out from under-

10    neath that.  But the fact of that prior case has essentially

11    doubled his mandatory minimum in this case, and I think that

12    that is a Draconian consequence enough in this case, and I

13    certainly hope that the Court will not go beyond the 10-year

14    mandatory minimum.  I know Mr. Gibbs has agreed, has been

15    willing to face up to, and it seems to me that that is more

16    than enough consequence for this activity.

17              THE COURT:  All right.  Thank you, Mr. Brose.

18              Mr. Gibbs, you don't have to say anything but if

19    you would like to, I'd like to hear from you.

20              THE DEFENDANT:  Yes.  First of all, my family

21    didn't arrive yet.  I wanted to apologize to them for all

22    the heartache I caused to them before the situation.

23              MR. BROSE:  Could I add one thing to that, Your

24    Honor?  I think I had given Mr. Gibbs a time of 9:30 for a

25    start time this morning.  I'm not sure if I gave it to him

1   or not but that was what time he thought we were going to

2   start today and that is why his family isn't here yet and we

3   didn't ask for a delay.

4              THE COURT:  If you would like to wait, sir, I

5   mean that is an imposition maybe on court personnel but I'll

6   ask them to wait.  I know this is an important event and I

7   read the presentence report and I understand you have loving

8   and supportive family that may well want to be here.  I mean

9   it's a sad -- I'll actually take my cue from you.  I'm going

10  to have to send you away for at least 10 years.  We all know

11  that.  And if you want them here to hear that, sad as it is,

12  then I'll absolutely be willing to go back and wait.  And

13  when they're here, we'll continue going on with what you

14  want.  If you would rather not, then we'll just go ahead

15  right now.  But if they're on their way, I mean obviously

16  they know or have some idea of what's coming.  Do you want

17  to wait until they come?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Okay.  I'll just go ahead and we'll

20  recess for now.  I'll ask somebody to let me know when your

21  family is here, and we'll come back in and they'll have a

22  chance to hear you themselves.  That may be important for

23  them as well as you.  So we'll go ahead and recess.

24              MR. BROSE:  Thank you, Your Honor.

25              THE DEFENDANT:  Thank you, Your Honor.

```
 1              (Brief recess taken.)

 2              THE COURT:  Please be seated.

 3              Okay.  To the family of Mr. Gibbs, thank you

 4    for being here.  I'm sorry there was some confusion about

 5    the start time.  We've already had proceedings for about

 6    20 minutes or so where we talked about some legal issues.

 7    We did not go through the portion of this court session

 8    where Mr. Gibbs will have a chance to speak and we'll go

 9    ahead and do that right now.

10              I'll ask Mr. Brose and Mr. Gibbs to come

11    forward.

12              (Mr. Brose and the defendant approach lectern.)

13              THE COURT:  All right.  Mr. Gibbs, if you would,

14    please, sir.

15              THE DEFENDANT:  First of all, I'd like to

16    thank my family for being here for me, giving me support

17    throughout all this.  I want to apologize to them.

18              That's all I have to say.

19              THE COURT:  All right.  Mr. Hall, anything on

20    behalf of the Government?

21              MR. HALL:  Just to repeat our position is,

22    our recommendation is the defendant be sentenced to the

23    mandatory minimum of 120 months.

24              THE COURT:  All right.  Well, the first thing I

25    need to do is to rule on the legal issue that has been put
```

1  in front of me, Mr. Gibbs.  That is, whether the guideline

2  calculations as contained in the presentence report is

3  accurate or not.  And my ruling is that they are accurate.

4         The law in this is pretty clear, and I'm not

5  sure how we end up where we end up today, where the

6  agreement is to only a portion of the quantity of the drugs

7  involved, when relevant conduct here involves drugs past the

8  confidential informant, drugs seized from your vehicle and

9  drugs seized from your home, the latter two occurring on the

10  same day.  And there is nobody else involved as far as the

11  Court knows, so it's all attributable you and it appears

12  clearly to be part of the same course of conduct.

13         I can't just ignore that.  I need to take

14  account of the real world.  That is my job.  So I do.  And I

15  hold that the guideline calculation is accurate at -- and

16  giving you credit for acceptance of responsibility, the

17  Total Offense Level is 29.  The Criminal History category

18  is IV because again I think the points are accurately

19  calculated based on the sentences you have received in the

20  past.

21         That yields a guideline range of

22  121-to-151 months.  And I'm going to sentence you to the

23  bottom end of that range.  So it's one month above the

24  120-month mandatory minimum.  The reason I'm doing that is

25  for -- well, there are a few reasons.

1          First, that's a long time.  You know, any way

2      you slice it, 10 years and a month is a long time and I

3      think under the statute that governs sentencing, it does

4      adequately reflect the seriousness of the offense here.

5      Indeed, it's within the guideline range.  So I'd say by the

6      Sentencing Commission's definition it's adequate, too.

7          The second reason is, however, I'm not unmindful

8      of the expectation that you had here, based on apparently

9      good faith efforts of your attorney, and I had that in mind

10     as I set this at that 120-month level.

11          Now, I know there is not really anything I could

12     say that would bring comfort to your family at this time.  I

13     will note for you, however, that although you are going to

14     miss a prime decade of your life, you still have, and I hope

15     you will take, an opportunity to recognize that this is far

16     from the end of your life, and that although you are going

17     to be in prison for a long time, you are going to do what

18     you can when you are institutionalized to change your life

19     and to be determined when you emerge from the prison setting

20     not to go back but to be an influence to the family's life

21     that will allow them to see you under circumstances where

22     the tears they shed are not of sorrow.

23          So that is the sentence I intend to impose

24     generally.  I'm going to read now the sentence in its

25     entirety and ask your lawyer and the Government's attorney

1    to tell me whether or not there is some legal reason why it

2    shouldn't be imposed.

3                Pursuant to the Sentencing Reform Act of 1984,

4    it is the judgment of the Court that the defendant Daimyon

5    Gibbs is hereby committed to the custody of the Bureau of

6    Prisons to be imprisoned for a term of 121 months.  This

7    sentence is within the sentencing guideline and is imposed

8    to reflect a mandatory minimum term of 120 months and

9    also reflect, as I have already described, the acts and

10   circumstances of this case and will provide adequate

11   deterrence to criminal conduct and protect the public from

12   further crimes of the defendant.

13               Upon release from imprisonment, the defendant

14   shall be placed on a term of supervised release for a term

15   of eight years.

16               Within 72 hours of release from the custody of

17   the Bureau of Prisons, the defendant shall report in person

18   to the Probation Office in the District to which of the

19   defendant is released.

20               While on supervised release, the defendant shall

21   not commit another federal, state or local crime, shall

22   comply with the standard conditions that have been adopted

23   by this Court and shall comply with the following additional

24   conditions:

25               The defendant shall not illegally possess a

1    controlled substance.

2                    The defendant shall not possess a firearm or

3    destructive device.

4                    The defendant shall cooperate in the collection

5    of DNA as directed by the probation officer.

6                    In addition, the defendant shall comply with the

7    following special conditions:

8                    The defendant shall participate in a drug

9    aftercare treatment program at the direction of the

10   Probation Office which may include testing.

11                   It is further ordered that the defendant shall

12   pay to the United States a special assessment of $100 which

13   shall be due immediately.

14                   I find the defendant does not have the ability

15   to pay a fine and will waive the fine in this case.

16                   Mr. Brose, is there any reason why the sentence

17   as stated ought not be imposed?

18                   MR. BROSE:  None that I know, Your Honor.

19                   THE COURT:  Mr. Hall?

20                   MR. HALL:  No, Your Honor.

21                   THE COURT:  All right.  Then I order it imposed

22   as stated.

23                   Mr. Gibbs, you will note that you are going to

24   be under supervised release for an extended period upon your

25   release from prison.  I hope not to see you again, sir,

```
 1      under these circumstances.  In other words, that you will
 2      adhere carefully to the supervised release supervision
 3      guidelines that you are going to be working under.
 4                   I need to tell you that if you feel you have a
 5      basis for appeal, that needs to be filed within 10 days of
 6      the entry of the Judgment and Commitment Order.
 7                   There is going to be a written order that
 8      follows up today's hearing, and then you have 10 days from
 9      the time that order is entered to file any appeal that you
10      and Mr. Brose think is in order.
11                   All right.  If there is nothing --
12                   MR. BROSE:  I'm sorry.  Two more things, Your
13      Honor:
14                   We'd ask if the Court would consider
15      recommending Mr. Gibbs to be serving his time local to here,
16      as close to here as possible.
17                   And also, Mr. Gibbs has asked if the Court would
18      order a drug rehabilitation program for him in prison while
19      he is there.
20                   THE COURT:  I'll take those things under
21      advisement.  And, Mr. Gibbs, I'm sure you know I can't tell
22      the prison to do something but I can make recommendations
23      and I'll take these very seriously and in all likelihood, I
24      will make those recommendations.
25                   THE DEFENDANT:  Thank you.
```

1          THE COURT:  Is there anything else, sir?

2          MR. BROSE:  Nothing, Your Honor.

3          THE COURT:  All right.  Mr. Hall?

4          MR. HALL:  No, sir.

5          THE COURT:  All right.  We stand in recess.

6          (Sentencing hearing ends at 9:45 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25